Thank you. Our next appeal is 23-29-26 Sawyer v. Kottemann. Okay, we welcome to the bench Ms. Jensen. Good afternoon almost. May it please the court. I'm Sheila Jensen. I'm representing the patient, Patrick Sawyer in this case, and we're asking for a reversal of the summary judgment that was entered in favor of the defendants. I know you've read the brief, so I just want to hit a couple highlights. The first one is, of course, is that as the plaintiff we had to prove the deliberate indifference to a risk of serious harm, and there's not a disagreement here as to at least six ways to show that. It can be inferred from the facts and the evidence, and in this case it was. We had not only the defendant's three deposition transcripts, we also had the plaintiff's deposition transcripts, we had medical reports, and we had the incident report that was authored by one of the defendants. That evidence shows that there was a deliberate indifference. We have somebody who was, and I just want to back up for a second, because between the defendants and the plaintiffs we seem to be on a different plane. What is the best medical evidence that you have that the defendants knew or disregarded a known risk to your client's health? When he fell in the shower, there were two falls. He fell in the shower. He said, I don't know why I fell. I hit my head, and my neck hurts, and I'm weak. He said those things. I think anybody that don't know why they fell, you don't throw them in a wheelchair and wheel them a half a block and put them in a soundproof room and say, here's some ice for your head, here's some juice, have something to drink, and I'll come back and see you. It's beyond the realm of common sense. Again, that's layman's, asking for medical, other than I watch football. I need some medical evidence. I don't think there's any medical, anybody that would agree that that's a proper way to take care of somebody who has a head injury. Motion for summary judgment. Okay, I'm not a doctor, and so for a medical indifference claim, you fell in the shower, and so if the evidence is because other people fall, it doesn't make good sense. I'm just, I'm asking for, what you're asking is do you want to appeal, right? Is to find that there was enough here to get beyond motion for summary judgment, and so I'm asking for medical evidence. What is the best medical evidence that the defendants were, or disregarded a known risk? It's the medical records themselves. Okay. The other point that I wanted to bring up is that there was so much questions of fact here, and so we have the medical records that say what? The medical records that said that he had weakness, that he hit his head, that he had no known reason why he fell, and that he hurt his neck. Those are the, excuse me, those are the medical records, and then what they did is, that was the nurse that was there on call, and then she called the doctor, and the doctor says, well, with all those things, and then, well, let me back up because the nurse didn't call at that point. The nurse didn't call until he had a bloody stool. I don't know if it's an hour. At the same time, or if it's an hour and a half later, it's unknown. Records are a little bit hazy on that point, but it wasn't until that point when the nurse called the doctor, and at that point, the doctor said, oh, with all those things, he must have hemorrhoids. Here's a man who's never been treated for hemorrhoids, and this is what they came up with, and they said, oh, well, you know what? Neck injury, headache, doesn't know why he fell, weak. I'll see him in a couple days. Didn't the nurse perform a neurological examination after he got to the health center? That's what the notes say. Didn't really happen. I mean, is there any reason to think that it didn't happen, that's in the record? I think that the plaintiff would deny that that happened. I mean, does he deny it in the response to the most reasonable judgment? I don't think it's in the briefs. And when Nurse McLaren first encounters Mr. Sawyer, the first when he falls in the shower, Nurse McLaren's testimony is that Mr. Sawyer seemed alert, didn't show any signs of acute distress, was able to stand and talk. I know Mr. Sawyer says his head hurt, right, and whatnot, but what, is there anything else at that point that would alert Nurse McLaren to the fact that she needs to call 911? She didn't want to listen to the plaintiff. He was trying to explain to her what his issues were, and she told him to shut up. So he didn't really get it out, either, what was going on with him, because she didn't want to hear it. She was going off shift, and she was going home. Did we put any evidence in the record regarding the standard of care? I think that Dr. Kotteman, I think he talked about the cause. I can't remember offhand if he talked about the standard of care. But again, I don't think... And again, I don't think that that's something that we can ignore the medical records when it comes to the standard of care, because you're talking about, quite frankly, three people who completely ignored somebody, in my opinion. They didn't listen to him. He had complaints. I think the records are questionable. But what are we basing that on? I'm basing it on the fact that there's contradictions between the records and, for example, Nurse Brown, Brown's testimony. Nurse Brown said, oh, I checked on him. I told him not to get up. He was sleeping. Well, you can't tell someone not to get up out of the bed if they're sleeping. That just doesn't make any sense. I think there's some controversy as to whether he had the bloody stool at 7 o'clock or at 8.45. I think the nurse said that they were going to check on him, but there's evidence that they didn't check on him for hours, for hours. You know, I'd like to reserve some time. Okay. Thank you, Ms. Ginton. Thank you. Mr. Grady. Good afternoon. May it please the Court? Hi. Dillon Grady on behalf of Defendants Dr. Cotterman, Nurse Franklin Brown, and Nurse Kayla McClaren. I'd like to make a comment on the primary judgment ruling, and Judge Pryor, you hit on the main issue in this case, is that there's a lack of medical evidence that plaintiff put forth to prove their case. Plaintiff has no medical training, and he has no evidence that the care provided by Dr. Cotterman, Nurse Brown, or Nurse McLaren was improper. Are you conceding that his head injuries were serious? Correct. We do concede that his head injuries were serious, especially the last one where he fell out of bed and he was bleeding. The first one, serious, I would agree that for purposes of this motion and summary judgment, we were not contesting whether or not that was serious. But for that one, the first fall, the fall in the shower, Nurse McLaren arrives on scene and observes plaintiff standing around in the housing unit, walking around. He was alert and oriented. She then places him in a wheelchair to transport him to the health care unit. She doesn't ignore his symptoms. She doesn't disregard that his symptoms may be serious. She transports him to the housing unit or the health care unit in a wheelchair, and then she transfers care to Nurse Brown, who then performs a neurological assessment, determines that all that was normal, that there was no other visible injuries on Mr. Sawyer at the time. Was there no other visible injury or did it say no visible injuries? Because both can't be true. He can't be bleeding and not have any visible injuries. Correct. Mr. Sawyer testifies that he was bleeding at the first fall, but the medical records do not support that. The steri-strips and the bleeding were actually... Will we accept that? Yes, Your Honor. But even if the fact that you may be bleeding does not mean you need emergent care. Again, Nurse Brown assessed him, performed a neurological assessment, and provided care. He said he provided him an ice pack, provided him juice, instructed him to remain in the bed and rest. He didn't ignore any of his symptoms. Even if there is a dispute about whether or not Mr. Sawyer was bleeding at the time, it's really immaterial to the deliberate indifference claim because it's clear from the medical records that Nurse Brown did not ignore Mr. Sawyer's symptoms, right? He performs this neurological assessment. He evaluates him. He places him in the infirmary under 23-hour observation. They don't send him back to the housing unit. They place him in the health care unit at this point in time to be seen by the doctor on the next day. So it's clear you do believe the defendants met the appropriate standard of care. What are you basing that on other than their own testimony? Professional medical judgment, Your Honor. We have a number of both Dr. Kottman, Nurse Brown, Nurse McLaren all performed evaluations of... I said other than their testimony. Other than their testimony, none. But the plaintiff was required to show evidence that defendants did not meet their professional medical judgment. And here he did not. A non-expert is not permitted to give expert testimony. And Mr. Sawyer was required to come forth with some evidence that the care provided by the defendant was improper. He did not do that. And so we're left with either direct or circumstantial evidence. And even under a circumstantial evidence, there's no evidence in the record for this court to say that the care provided by Kottman, Brown, and McLaren was a substantial departure from the accepted professional medical judgment. No one ignored Mr. Sawyer's complaints. Again, Nurse McLaren responds to the housing unit and takes Mr. Sawyer to the health care unit. She didn't assess him there and leave him there. Transferred to the health care unit and Nurse Brown takes over and he performs a neurological assessment, gives him pain medication, ice, juice, tells him and nobody ignored Mr. Sawyer or sent him back to the housing unit. And Dr. Kottman was notified and said he'd come and evaluate him the next morning. No one was ignoring Mr. Sawyer's care and concerns. And so there is no evidence in this record for the court to find that the defendants did not use the professional medical judgment in evaluating and treating a patient with a head fell again a second time while in the health care unit. As soon as he was found, he was again, bandages were applied, steri-strips to stop the bleeding, and he was taken outside the prison to the emergency room where it was determined that he had three unknown medical symptoms, right? Salmonella, a membrane across his heart, and a cervical bruise or issues in his neck. None of these were known by the defendants and there's no evidence that any of the defendants were aware of any of those symptoms prior to any of the falls or after the first fall. It's even unclear when or what caused those injuries, right? Again, because Sawyer did not present any medical evidence that he fell because of these undiagnosed symptoms or that they should have been diagnosed in advance. Dr. Kotteman was treating Mr. Sawyer for Crohn's disease and anemia, but again, he was not ignoring those conditions. He was providing regular and consistent care and reviewing the care, the totality of the care. Starting in 2019, Dr. Kotteman referred Mr. Sawyer to an outside specialist, a gastroenterologist, to track and follow Mr. Sawyer's Crohn's disease, and Dr. Kotteman implemented all those recommendations of the outside specialist. So again, this case rests on the fact that the plaintiff, Mr. Sawyer, failed to present any evidence that the care of Dr. Kotteman of his Crohn's disease, his known Crohn's disease, and his anemia was insufficient. There's no evidence in the record that Mr. Sawyer presented that any of the defendants were aware of these other conditions that existed or that they should have been aware of these other conditions. Mr. Sawyer fell on August 10th, 2019. His last visit with Dr. Kotteman was eight days prior on August 2nd of 2019, where he was evaluated and determined appropriately to be placed in the housing unit. The deliberate indifference is missing because Mr. Sawyer failed to present evidence that defendants were aware or that their care was improper, and we cannot infer it based on the record. These are not broken noses or broken bones that were open and obvious. These are other conditions that were not obvious, and so we need direct evidence rather than the circumstantial evidence that is appropriate in other cases. And even if the care didn't meet the standard of care, deliberate indifference requires more than that, doesn't it? Correct. It requires a deliberate disregard of Mr. Sawyer's medical conditions. A knowing disregard. Correct. A conscious disregard. And there's no, again, there's no evidence of that. Each of the defendants, whether their care was perfect, that's not the standard, and this is not a negligence case. But were they providing care to Mr. Sawyer? Yes. Dr. Kotteman was following him, tracking his anemia, prescribing medications, informing him the proper doses of Imuron to take. Nurse McLaren evaluated Mr. Sawyer at the housing unit, transferred his care to Nurse Brown at the healthcare unit, and Nurse Brown performed a neurological assessment, evaluated him, he observed this bloody stool, which, again, in the record there's some dispute about that, but Nurse Brown actually testified that he observed the stool to be normal with a small amount of blood on top at 8.45 p.m. He called Dr. Kotteman. They discussed it and determined that based on the description that Nurse Brown had observed, that it was likely hemorrhoids, and that Dr. Kotteman would be in first thing in the morning to evaluate Mr. Sawyer. There's no evidence in the record that Mr. Sawyer presented that any of this care that was given by Dr. Kotteman, Nurse Brown, or Nurse McLaren was improper, or that it was the cause of any of his falls. Again, he presented no evidence that they were aware or should have been aware of any of these other symptoms that were discovered once he was transferred to an ICU with his heart and then the cervical tissue. So for those reasons, we ask that the court affirm the summary judgment motion and the district court's decision. Thank you, Mr. Grady. Ms. Ginson, we'll give you one minute. I just want to address really quickly some of the things that Mr. Grady had talked about. First of all, Brown did not check on Mr. Sawyer. He had a head injury and he was weak. He came in at 7 o'clock, whether 845 happened or not, but Mr. Sawyer stated that he fell out of bed. He was in a pool of blood. He couldn't move his arms or his legs and he couldn't call out. They put him in a soundproof cell and he watched the outside go from daylight to dark. So, I have questions about whether 845 is legitimate or not. Furthermore, if it did happen at 845, Mr. Sawyer was not checked on again for four hours because it wasn't even Brown that found him at 220 in the morning on the floor. It was the guard. As for Dr. Kahneman saying he'd seen him the first thing in the morning, this was Saturday night. Dr. Kahneman wouldn't have been there until Monday. Now, the cause of the fall, and they did this again, you know, they're talking about the cause of the fall. We're talking about what they did to him after he fell. Whether he had a heart condition, whether he had salmonella, whether he had anemia, the issue is what did they do for him after he fell? And Ms. Ginson, we need you to wrap up. You've exceeded your time. Okay. He was being treated for anemia and he was being treated for Crohn's disease by Dr. Kahneman. But Dr. Kahneman also testified, and that's on page six of the reply brief, that it was more likely than not that the fall in the shower resulted in Sawyer's weakness. And he also testified that a bruise to Sawyer's spinal cord could cause the extreme weakness that resulted in the C3-C4 disc injury. Thank you. Thank you. We thank the parties in this case and we'll take it under advisement.